**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL V.,

       Claimant,

   v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

       Respondent.

No. 23 C 16795

Magistrate Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

Michael V.[1] ("Claimant") appeals the decision of the Commissioner of Social Security[2] ("Commissioner"), denying his application for disability insurance benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.[3]

**Background**

Claimant applied for disability insurance benefits on September 23, 2021, alleging a disability onset date of March 23, 2019. (R.24). His application was denied initially and on reconsideration after which Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). At that hearing, Claimant amended his disability onset date to March 23, 2020. (*Id.*) After the hearing, the ALJ issued his

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

[3] The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 14].

1

decision on June 1, 2023, denying Claimant's application for benefits and concluding he was not disabled under the Social Security Act. (R.24-32). The Appeals Council denied Claimant's request for review (R.1-6), leaving the ALJ's decision as the final decision of the Commissioner, which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since March 23, 2020, the amended alleged onset date. (R.26). At step two, the ALJ found that Claimant has

2

the severe impairment of diabetes and non-prolific diabetic retinopathy. (R.26). At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or equals a listed impairment. (R.27). At step four, the ALJ determined that Claimant has the RFC to perform light work with certain limitations as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant: is limited to frequent visual acuity and depth perception in the right eye, but has normal vision in the left eye; is able to avoid ordinary hazards in the workplace, and read and see small letters and signs; can neve[r] [sic] work at unprotected heights; must avoid concentrated exposure to moving mechanical parts; and should perform no commercial driving.

(R.27). Based on this RFC assessment, the ALJ concluded that Claimant is capable of performing his past relevant work. (R.31). The ALJ, therefore, concluded Claimant was not disabled from March 23, 2019 through June 1, 2023, the date of his decision (R.31-32).

The district court reviews the ALJ's decision deferentially and must affirm the decision if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has concluded that an ALJ's decision is "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Though the standard of review is deferential, the court

3

must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even if there is adequate evidence in the record to support an ALJ's decision, that decision cannot be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Warnell*, 97 F.4th at 1053.

Claimant first argues that the ALJ improperly evaluated the medical opinion of his treating eye doctor, Roger Adler, M.D. The Court disagrees. The regulations require ALJs to consider a number of factors when evaluating medical opinions, the most important of which are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2), (c). The regulations additionally require ALJs to explain how they evaluated the medical opinions and whether or not the opinions are persuasive and why. *See* 20 C.F.R. § 404.1520c(a) and (b)(1).

In this case, the ALJ found Dr. Adler's opinion was not persuasive and provided the following explanation:

> Of note, Dr. Adler opines that the claimant could frequently use near visual acuity, and never far visual acuity. This is almost the exact opposite of what the claimant described in his hearing testimony, when he noted having a very hard time reading and watching things up close, but explained he could see things better if they were a little further away and he could use more of his full breadth of visual field. In addition to the specific allegations and observations, Dr. Adler opined that the claimant had poor vision, and was unable to see well, and that these are the reasons he would be limited in his ability to work. These opinions are simply too vague to help inform the claimant's residual functional capacity.

(R.31). In accordance with the regulations, the ALJ found that Dr. Adler's opinion was not consistent with Claimant's testimony and concluded that his opinion was too

vague, which the Court interprets as it lacked adequate support in the record. (R.31). Claimant does not address the ALJ's reasons for discounting Dr. Alder's opinion. Instead, Claimant points to other evidence in the record and essentially asks this Court to weigh the evidence differently, but that is something the Court cannot do. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it."). The ALJ provided more than sufficient reasons to support his decision to reject Dr. Adler's opinion, and the Court cannot, and will not, disturb the ALJ's assessment.

Claimant next argues that the ALJ improperly substituted his own lay opinion when fashioning the RFC without medical evidence to support it. This argument also is not persuasive and frankly is contradicted by the record. In crafting the RFC, the ALJ clearly relied on opinions of the state agency doctors, which he found persuasive, and determined that Claimant could perform light work with certain visual and environmental limitations. (R.27, 30). The ALJ explained:

> The state agency medical consultants at the initial and reconsideration levels opined that the claimant would be restricted to light exertion, with a need to avoid workplace hazards (1A; 3A). They further opined that the claimant could meet the demands of past work (although they used a different DOT listing for the claimant's past work (1A; 3A). These are well-supported by the medical evidence, and are consistent with other opinions. As such, they are persuasive.

(R.30). The ALJ's determination that Claimant could perform light work with certain visual and environmental limitations is consistent with the opinions of the state

agency physicians.[4] The law is well-settled that "the opinion of a non-examining state agency consultant is the type of medical evidence an ALJ may rely upon to craft a claimant's RFC." *Devon T. v. Saul*, 2020 WL 496609, at *11 (N.D. Ill. Jan. 30, 2020).

Relying on the opinions of the state agency physicians in addition to Claimant's treatment history, the ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the most current and complete evidentiary record, and therefore it represents the most current and complete assessment of the claimant's conditions, abilities, and limitations. The claimant's diabetes, and the reports of related physical pain, warrant the restriction to light exertion. Additionally, the claimant's impaired vision, primarily in his right eye, warrants the limitations on need for visual acuity and depth perception on the right, as well as the prohibitions on exposure to significant hazards in the workplace, such as unprotected heights, moving mechanical parts, and driving.

(R.31). The ALJ's RFC determination clearly is tied to the opinions of the state agency doctors, which Claimant does not challenge, and to the ALJ's evaluation of Claimant treatment history and his hearing testimony.[5] Claimant's argument that the ALJ

---

[4] In May 2022, state agency physician Dr. John Peterson determined, among other findings, that Claimant should be limited to frequent acuity and depth perception in the right eye and should avoid concentrated exposure to hazards. (R.76). In reaching his conclusion, Dr. Peterson considered Claimant's treatment history, including his vision exam results. (R.76). Upon reconsideration, state agency physician Dr. Kathleen Treanor reached a similar conclusion, also noting that Claimant could read small letters and signs and could travel independently. (R.83).

[5] The ALJ found that Claimant's hearing testimony was inconsistent with other record evidence. (R.30). Claimant testified he had difficulty viewing his smartphone and computer, but he identified reading and texting as daily activities in his Function Report, which was submitted almost two years after the alleged disability onset date. (R.30). Similarly, Claimant testified he could only listen to videos that his friends sent him, but he previously listed watching videos everyday as hobby the year prior. (R.30) The ALJ reasonably considered these inconsistencies when considering the extent of Claimant's symptoms and complaints. *See Green v. Saul*, 781 F. App'x 522, 526 (7th Cir. 2019) ("ALJs are tasked with reviewing the evidence provided and assessing whether a claimant is exaggerating the effects

should have credited the opinion of his treating doctor or that the ALJ should have followed up with him is not persuasive, and the law is clear that the ALJ is not required to do that. *See Patrick C. v. Saul*, 2020 WL 6287370, at \*6 (N.D. Ill. Oct. 27, 2020) ("It must be remembered that all the ALJ has to do is minimally articulate his or her reasons for rejecting a medical opinion…The ALJ doesn't have to delve into each factor that goes into the assessment of medical opinion, chapter and verse.").

The relevant question for this Court is not whether the ALJ's assessment is correct but whether it is reasonable. *See Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("An ALJ's job is to weigh conflicting evidence, and the loser in such a process is bound to believe that the finder of fact should have been more favorable to his cause."). Here, Claimant fails to meet his burden of demonstrating that the ALJ's analysis is unsupported. To the contrary, the Court finds that there is more than enough evidence in the record to support the ALJ's decision and that the ALJ provided the requisite logical bridge between the evidence and his conclusion. The ALJ's decision, therefore, must be affirmed.

## Conclusion

For the reasons set forth above, the Court denies Claimant's Brief in Support of Social Security Appeal [ECF No. 23] and grants the Commissioner's Motion for

---

of her impairments, and reviewing daily-living activities is an important part of that evaluation") (citing *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016)). The ALJ also noted the disparity between Claimant's complaints and his treatment timeline and concluded that the medical records did not document a significant worsening of his vision between October 2019 and March 2023. (R.30). These inconsistencies provide ample support for the ALJ's decision to not fully credit Claimant's complaints and symptoms.

Summary Judgment [ECF No. 25]. The Commissioner's decision is affirmed, and this case is closed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 23, 2026

8